## Patrick v. Commonwealth.

(Decided February 12, 1926.)

## Appeal from Knott Circuit Court.

1.  Taxation—Dormant Claims Under Kentucky, as Well as Virginia, Patents May be Forfeited Under Statute for Failure to Assess and Pay Taxes.—Under Acts 1906, c. 22, art. 3, sections 1-10, now being Ky. Stats., sections 4076b, 4076k, dormant claims to lands embraced in old Kentucky patents, as well as Virginia patents, issued before Kentucky became a state, may be forfeited for claimant's failure to assess or pay taxes for five years.

2.  Taxation—Forfeiture of Claims Under Old Patents May be Insisted on, Notwithstanding Tender of Delinquent Taxes After Right has Been Invoked.—After Commonwealth has invoked right, under Acts 1906, c. 22, art. 3, sections 1-10, now being Ky. Stats., 4076b, 4076k, to forfeit claims under old land patents, because of claimant's failure to assess and pay taxes for five years and right stands confessed in pleadings, Commonwealth may decline to accept subsequent tender of taxes, penalties, and costs for preceding five years on assessment fixed in claimant's answer and insist on forfeiture; such procedure not being within purview of section 4076e, providing only method for reclaiming property.

3.  Taxation—Relator Unnecessary in Proceeding to Forfeit Claims Under Old Patents.—Specific provision of Ky. Stats., section 4076d, that Commonwealth's attorney shall institute proceedings in name of state to forfeit claims under old land patents, dispenses with necessity for relator.

4.  Taxation—Action to Forfeit Claims Under Old Patents Does Not Accrue and Limitations Run Until After Failure to Assess and Pay Taxes for Five Years.—Commonwealth's action under Acts 1906, c. 22, art. 3, sections 1-10, now being Ky. Stats., section 4076b, 4076k, to forfeit claims under old land patents, does not accrue, so as to start running of limitations, until after failure to assess and pay taxes for five years.

5.  Taxation—Circuit Court Erred in Entering Judgment of Forfeiture Conditioned on Location of Patent, Without Determining Fact.— Knott circuit court had no jurisdiction, under Acts 1906, c. 22, art. 3, sections 1-10, now being Ky. Stats., sections 4076b4076k, to forfeit patent to land wholly in Breathitt county, and hence erred in sustaining demurrer to answer raising such issue and entering judgment of forfeiture "if said patent lies partly in Knott county and partly in Breathitt," instead of determining fact and rendering judgment accordingly.

O. H. POLLARD for appellant.

JOHN D. SMITH, Commonwealth Attorney, for appellee.

JOHN D. CARROLL, Amicus Curiae.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming in part and reversing in part.

The Commonwealth, through the attorney of the
Commonwealth, in the district of which Knott county is
a part, in December, 1917, instituted this proceeding in
the circuit court of that county against appellant and a
number of other defendants, some of whom were the un-
known owners or claimants to one or more of a large num-
ber of patents issued by this Commonwealth to Kiar
Webb in August, 1866, all of them lying, as alleged, in
Knott county.

The proceeding is under the provisions of the act
of 1906, the same being now section 4076b-4076k, inclu-
sive, of the Ky. Stats. of 1922, and its purpose was to
forfeit to the Commonwealth, under the provisions of
that act, the title or claim of all the defendants to any
of the lands described in the several Kentucky patents
enumerated because of the failure of the defendants and
each of them to list for taxation the named tracts of
land, or either or any part of them for taxation from
and including the year 1910 up to and including the year
1917.

Appellant was the only defendant who appeared in
the action, and he by his answer expressly disclaims any
title or claim to any of the patents described in the peti-
tion except eight two hundred acre patents described
therein. He then alleges affirmatively in a separate
paragraph that he became the owner by purchase in Sep-
tember, 1912, of the land embraced in those eight patents,
and that he is now the owner of same by a paper title de-
ducible from the Commonwealth, "and that he is charge-
able with and should, and is willing to pay the legal tax
on the said lands described in said patents for the years
1913, 1914, 1915, 1916, 1917, and no more."

He then alleges that one of the two hundred acre
patents lies wholly in Breathitt county, Kentucky, and
in not assessable for taxation in Knott county, and that
because of the overlapping in three of the other patents,
the three fall three hundred acres short, in the aggre-
gate, of having two hundred acres each, and that deduct-
ing the two hundred acres wholly in Breathitt and the
three hundred acre shortage because of the overlapping,
there were 1,100 acres assessable in Knott county in the
eight patents claimed by him. He then says he is willing
to pay the tax in Knott county on the same for the five

years from 1913 to 1917, inclusive, as well as the penalty and interest thereon, and a reasonable attorney's fee to the attorney for the Commonwealth, the rate of assessment to be for those years the same as similar lands lying adjacent thereto or in the neighborhood thereof being of similar quality and value, and held under similar title, which he says for the years mentioned was from one to two dollars per acre, and tendered into court an amount sufficient to cover the taxes, interest, penalties and a reasonable attorney's fee upon this basis, which sum the attorney for the Commonwealth declined to accept. He then in a separate paragraph of the original answer, and in an amended answer thereafter filed, relies upon the five years statute of limitation as a bar, apparently upon the theory that the allegations of the petition show that the Commonwealth's right of action accrued in 1910 and was barred because not asserted until 1917.

A demurrer to the petition was overruled, and at first a demurrer to the answer was likewise overruled. Then a reply was filed putting in issue certain affirmative allegations of the answer. But upon a final hearing the demurrer to the answer was sustained, and the court entered a judgment forfeiting to the Commonwealth the title and claims of each and all of the defendants, including appellant, to certain tracts of land described in the petition, except as to the two hundred acre patent No. 37,991 alleged by appellant to be wholly in Breathitt county, and as to that patent it adjudged:

> "and if said patent lies partly in Knott county and partly in Breathitt, the entire patent is hereby forfeited, and if no part lies in Knott and all of it in Breathitt then no part of the same is forfeited by this proceeding."

On this appeal the grounds for reversal are:

1. That the demurrer to the petition should have been sustained because the act of 1906 has application only to old Virginia land grants, and not to patents issued by the Commonwealth of Kentucky.

2. That as the law does not favor forfeitures, in an action to forfeit because of failure to list the property for taxes and pay same a tender of the taxes and cost of suit extinguishes the demands of the state; and the refusal of the Commonwealth to accept the tender bars its right to insist upon the forfeiture.

3. That a suit or proceeding instituted in the name of the Commonwealth must be brought on relation of some person authorized to act for it, and that therefore the special demurrer filed should have been sustained.

4. Limitation.

5. That the answer presented a good defense as to the patent alleged to be wholly in Breathitt county; and the circuit court of Knott county had no jurisdiction to forfeit the title to a patent lying exclusively in another county.

The argument that the act of 1906 in its letter and spirit has application only to Virginia patents issued before the creation of this state, is not based upon the language of the act itself, and could not well be. It is rather based upon the theory that for more than one hundred years prior to 1906 these old dormant Virginia patents had been a source of great aggravation and uncertainty in the settlement of land titles in some sections of this state, and that because of that situation which previous efforts upon the part of this state had been unable to allay, the very stringent act of 1906 became necessary for the purpose of settling titles complicated and covered by these old Virginia patents. There would be more force to the argument if in truth that was the only evil intended to be corrected by that act; not only were these old dormant Virginia patents, many of them for unlimited numbers of acres, presenting a barrier to the development of certain sections of the state because of the unsettled land titles therein, but to a great extent the same section was covered and re-covered by overlapping patents issued in the early days of this state's existence as well.

So that the problem with which the General Assembly was dealing in the enactment was larger and greater and more comprehensive than a mere purpose by forfeiture provided for in a revenue statute to get rid of the old Virginia claims, and outlaw those patents. It was necessary not only to do that, but equally important that it should also provide a plan for the forfeiture of dormant claims to lands embraced in patents issued by this state. For obviously it would not fully accomplish the purpose aimed at—to settle land titles embraced in these old patents whether issued by the one state or the other—if it only applied to a part of those old patents and not to all of them. That such is the meaning of the act is plain from its very broad and comprehensive terms;

it clearly makes it the duty of each and every owner or claimant of land to pay all taxes which have been or should have been assessed against them, and makes no exception, whatever the source of title may be; it declares such owner or claimant a delinquent after having failed to assess and pay the taxes for five years, and makes it the duty of a public official to institute an equitable action in the name of the Commonwealth to forfeit his title or claim to such land, without suggestion as to the source of his title or claim.

That such is the correct interpretation of the act may be gathered not only from the evils intended to be corrected by it, but from the fact that this court has in more cases, than one enforced the forfeiture of title or claims based upon Kentucky patents, although it must be admitted that the question here made does not appear to have been made in any of those cases.

But it is claimed that because the law does not favor forfeitures, and appellant in his answer filed some seven or eight months after the Commonwealth had invoked its remedy provided by the statute, offered to pay the taxes, penalties and costs for five years theretofore upon an assessment fixed by him in his answer, that the Commonwealth thereafter should not in equity be heard to insist upon the judgment of forfeiture.

Clearly even if any such method of assessment could be upheld in any event, and even if the circuit court had by statute or otherwise the power to assess property for taxation, there can be no doubt that after the Commonwealth has invoked its right of forfeiture given by the statute, and after it stands confessed in the pleadings that under the terms of the statute the right of forfeiture exists, in the absence of a statute authorizing such procedure, the Commonwealth was within its rights in declining to accept the tender, and in insisting upon the forfeiture. The statute provides in explicit terms that the right of forfeiture exists when the owner or claimant has failed to assess or pay the tax for five consecutive years, and there is a total failure to provide any method whereby the delinquent may come into court after the right of forfeiture has been invoked, and escape the provisions of the statute by a tender, based upon an unauthorized assessment. In the case of Bronaugh v. Com., 188 Ky. 103, a somewhat similar question was presented, and the court held in substance that when the proceeding

was instituted the cause of forfeiture had matured, and that there was no statutory provision for the extinguishment of such cause of forfeiture by the assessment of the property and the payment of the taxes, where the cause of forfeiture occurred after 1906.

The only provision in the statute authorizing defendant to come into court and reclaim his property is section 4076e, and that prescribes a proceeding to be begun by the defendant at the term of circuit court next succeeding the term when the judgment of forfeiture was entered, and authorizes him upon the filing of certain pleadings, and an offer to purchase back the property from the Commonwealth, to do so on certain conditions, one of which is the payment of the taxes thereon for a period of fifty years immediately preceding the filing of the pleading. Clearly the procedure adopted here was not within the purview of that section.

The claim that the special demurrer should have been sustained because there was no relator named in the petition to act for the Commonwealth cannot be sustained. The statute provides (4076d) that upon the existence of the facts authorizing a forfeiture under his terms,

> "that is shall be the duty of the Commonwealth's attorney to institute in the circuit court of the county in which said land or any part thereof lies, a proceeding in equity in the name of the Commonwealth of Kentucky as plaintiff against said tract of land, and the owners or claimants of said land as defendants."

This specific provision, having reference to the particular kind of proceeding, is too specific to need interpretation, and upon its face dispenses with the necessity for any relator in such proceeding.

On the question of limitation clearly appellant's contention cannot be sustained. The petition alleges in substance that none of the defendants, including appellant, who were the title holders or claimants, or their predecessors in title, had either assessed or paid the taxes on any of the land described in the petition for the years from 1910 to 1917, inclusive, a period of eight years. The appellant's answer alleges that he became the title holder of the eight designated two hundred acre patents in 1912, but does not deny the essential forfeiture facts alleged by the Commonwealth.

It seems to be the theory of appellant's counsel that the cause of action asserted by the Commonwealth accrued in 1910 under the allegations of the petition, and that therefore more than five years having elapsed since accrual the action is barred by the statute. The basic error in this contention is that the cause of action did not in fact accrue beginning with 1910, until the expiration of five years thereafter, or 1915; and the action having been begun in the latter part of 1917 clearly was not barred in any view of the case.

But we are constrained to say that under the state of the pleadings and the form of the judgment in so far as it affects the two hundred acre patent No. 37,991, alleged by defendant to lie wholly in Breathitt county, the judgment is erroneous.

In the first place the Knott circuit court had no jurisdiction to forfeit that patent if the same was wholly in Breathitt county, and in the next place the judgment as entered did not determine the rights of the parties in so far as that tract of land was concerned. The issue was squarely made by the pleadings that the court had no jurisdiction as to that patent because no part of it was in Knott county, and the court without passing upon the question of fact so made, left it wholly undetermined whether any part of it was or not in Knott county, and merely entered a conditional judgment which did not settle the rights of the parties. Instead of determining the fact whether any part of that tract was in Knott county, and thereafter either exercising the jurisdiction to forfeit or declining to exercise it, the court sustained a demurrer to the answer in the face of that issue of fact, and proceeded to enter the judgment it did evidently being in doubt as to whether any part of the tract laid in Knott county.

So far as that tract was concerned the demurrer to the answer was erroneously sustained, and upon the submission of the action the same should have been dismissed in so far as that tract of land was concerned.

Upon a return of the case the court will modify its judgment so as to dismiss the petition of the Commonwealth as to that tract (patent No. 37,991) and apportion the cost between the parties upon equitable principles.

Because of the one error indicated, the judgment is reversed with directions to enter a judgment as herein indicated.