# First National Bank of Breeze, Illinois. v. Williams Feed Company, a Partnership.

### (Decided March 26, 1926.)

### Appeal from Pike Circuit Court.

1. Appeal and Error.—Motion for new trial of ordinary action, not transferred to equity, though tried by court without jury, is necessary to present questions relied on for reversal.

2. Appeal and Error.— Errors based on evidence cannot be eviewed unless made part of record in legal form.

3. Appeal and Error.—In absence of evidence, incorporated in record in legal form, only question presented on appeal is whether pleadings sustain judgment.

4. Appeal and Error.—Evidence, when not made part of record, will be presumed by appellate court to sustain judgment.

5. Clerks of Courts.—Clerks of circuit court must index transcript, in view of Court of Appeals Rule 3, subsections 7-10, and may be penalized for failure to do so.

PICKLESIMER & STEELE for appellant.

DAUGHERTY & BARRETT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Williams Feed Company (hereinafter referred to as plaintiff) was a partnership composed of John Scott and Robert Williams, and the firm conducted a general retail feed store in the town of Pikeville, Kentucky. On June 23, 1923, plaintiff purchased from the defendant, Aviston Milling Company, a corporation of Aviston, Illinois, a carload of "flour and feed" as described in the petition, but how much of each is nowhere alleged. Plaintiff paid a sight draft attached to the bill of lading and sent to a local bank in Pikeville covering the invoice of the shipment before the goods were unloaded from the car. It claimed that *some* of the flour which it sold to *some* of its customers was afterwards discovered to be spoiled because it was found to contain "worms, bugs, dirt, filth and foreign matter," rendering it "unhealthy, unsanitary and unfit for baking or domestic use." It so notified defendant, but for some cause the matter was not adjusted, and in the latter part of March, 1924, Scott, one of the members of plaintiff company and who was a member of another firm in Pikeville, ordered from defendant a consignment of another carload of merchandise for the latter company, and when it arrived in Pikeville plaintiff filed this ordinary action against defendant and caused an attachment to issue which the sheriff attempted to levy on the latter consignment of merchandise. Defendant was not served with process but a warning order was issued on the averments contained in the petition, followed by the appointment of a corresponding attorney, and a copy of the attachment was also delivered to that attorney. Soon thereafter plaintiff procured an order from the circuit judge to sell the attached property to

satisfy its alleged debt growing out of the alleged depreciated condition of the flour which was fixed in the petition at the sum of $1,000.00, one-half of which was because of the decreased value of the whole shipment of flour and the other half represented damage to plaintiff's business as a result thereof. Some two or three days before the order of sale was to be carried into effect by the sheriff the appellant, First National Bank of Breeze, Illinois, filed its intervening petition in the cause and alleged that immediately upon making the attached shipment the defendant transferred to it the bill of lading therefor, as well as the draft attached thereto covering its invoice, and it credited defendant on its books with the amount of the draft, by means of all of which it became the owner of the consignment as well as the draft representing its value. Plaintiff denied all the averments of that pleading, and upon trial before the court without a jury a personal judgment was rendered against defendant, who had never appeared in the cause; the attachment was sustained and appellant's intervening petition dismissed, to reverse which latter order this appeal is prosecuted.

Before taking up the controlling questions in the case we feel impelled to say that this record truly presents a "comedy of errors," beginning with the filing of the petition and continuing and including the filing of the record in this court, and in the commission of which both parties to this appeal participated. To begin with, the petition, we repeat, nowhere alleged the amount of flour contained in the shipment complained of, nor was there any averment as to the extent of its depreciation on account of the defects relied on. The only one in the petition on that point was that plaintiff sold the flour "at a loss of more than $500.00 on account of the condition of said flour," and that "their trade in flour has been and is damaged in the sum of $500.00," because of loss of customers. In the affidavit for the attachment nothing was said as to the nature of plaintiff's claim other than the general statements in the petition as grounds for recovery, nor did the affidavit state the amount that plaintiff ought to recover, or that its claim was just, each of which are required by section 196 of the Civil Code. In addition to those defects in the affidavit to procure the attachment the record does not disclose that any attachment bond was ever executed at any time.

There was no statement in the petition, or in any affidavit filed in the cause, giving the name of a place wherein a post office was kept nearest to where the defendant or its chief officer or agent resided, or might be found, as is required by subsection 2 of section 58 of the Civil Code; nor was their any statement excusing such failure and, therefore, the requisite showing for a warning order was not made. However, defendant did not appear in the cause and no motion or other step was taken by any one to correct or take advantage of such defects. Clearly, the personal judgment against defendant was absolutely void, and, perhaps, also the same is true with reference to the warning order, but none of those questions are presented on this appeal for our determination. What purports to be the proof (a consideration of which will hereinafter be made) discloses that there was no competent testimony as to the extent of plaintiff's damage. The only witnesses who testified upon that issue were the members of the firm, and what they testified to was elicited by most glaring and improper leading questions to which no objection was made. Scott testified that the feed contained in the shipment about which complaint is made was in perfect condition, and that it was only the flour contained in the shipment that was any wise damaged or depreciated. Upon the question of plaintiff's damage on that account he was asked and answered these two questions: ''Did the Williams Feed Company sustain any damage by reason of the purchase of this spoiled flour, and by reason of its sale by you in your trade? A. Yes, sir. Q. What amount of damages, on account of these two facts, first the purchase of the spoiled flour, and second, its sale to your trade, would you say the Williams Feed Company sustained? A. $1,000.00 damages.'' And that was all of his testimony upon the subject.

Williams, the other member of the firm, thus testified upon the same issue: ''Q. Did you sell *some* of that flour to your trade? A. Yes, sir. Q. Did you have to repurchase *part* of the flour you sold to your trade? A. Yes, a good many of the people brought it back, *some* did not. Q. Were you damaged by reason of having sold this flour to your trade? A. Yes, sir, damaged considerable.'' (Our italics). And it was solely upon that testimony, which was unobjected to, since defendant was not before the court, that the personal judgment against it was rendered and the attached property subjected to

its payment. It is, therefore, clear that our statement, *supra,* concerning the "comedy of errors" is established so far as plaintiff is concerned.

It has been made apparent that the pleadings cast the burden on appellant to establish its title to the attached property, which, of course, required the introduction of testimony. The clerk has copied certain papers in the transcript as the depositions of various witnesses testifying both for plaintiff and appellant, but no bill of exceptions was filed by the latter incorporating therein any testimony heard upon the trial, nor was there any motion made for a new trial. The action was an ordinary one, and was never transferred to equity, and though tried by the court without the intervention of a jury a motion for a new trial was necessary to present the questions relied on for a reversal. Sovereign Camp Woodmen of the World v. Hornung, 190 Ky. 381; National Council Daughters of America v. Polsgrove, 192 Ky. 495; Forgarty v. Neal, 201 Ky. 85, and Board of Drainage Commissioners v. I. C. Railroad Company, 202 Ky. 735. But even if there had been such a motion made, we could consider no question raised by it, except such as were founded upon the record made by the court, and could not review any errors based upon the evidence heard at the trial, unless it was made a part of the record in some legal form. Patrick v. Commonwealth, 213 Ky. 37, and other cases referred to therein.

Those cases also announce the rule that in the absence of the evidence the only question presented on appeal is: Whether the pleadings sustain the judgment? The only judgment complained of in this case is the one dismissing appellant's intervening petition. The pleadings sustain it, and in the absence of the evidence we must presume that it also sustained that order. The affirmance of it will not be construed as approving other parts of the judgment affecting the rights of the defendant, milling company, and its remedies as a nonresident defendant, as furnished by various sections of the Code, will still be open to it.

Subsections 7, 8, 9 and 10 of rule III of this court relate to the indexing of the transcript by the clerk, and in subsection 9 it is provided that, "The name of each witness and the page on which his testimony begins shall be stated in the index." The clerk in this case did not follow that rule, which is exceedingly important in as-

sisting this court in its examination of the record. We have frequently called attention to the circuit clerks in the Commonwealth to the rule, notwithstanding which its violation is persisted in, and because it was not observed in this case the clerk of the Pike circuit court will forfeit and not be allowed to collect $10.00 of his cost for making the transcript.

Wherefore, the judgment is affirmed.